IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| Essex Insurance Company, <br>     Plaintiff, <br> v. <br><br> J&J Cable Construction, LLC, <br> Dixie Electric Cooperative, <br> Marrell A. Crittenden, Jr., <br> Individually and as Next Friend of <br> M▇ C▇▇ and A▇ <br> C▇▇, and Courtney Bynum <br> Crittenden, Individually and as <br> Next Friend of M▇ C▇▇ <br> and A▇ C▇▇, <br><br>     Defendants. | CIVIL ACTION NO.: 3:15-cv-506-WHA |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Essex Insurance Company states the following as its Complaint for Declaratory Judgment against Defendants J&J Cable Construction, LLC, Dixie Electric Cooperative, Marrell A. Crittenden, Jr., Individually and Next Friend of M▇ C▇▇ and A▇ C▇▇, and Courtney Bynum Crittenden, Individually and as Next Friend of M▇ C▇▇ and A▇ C▇▇.

1

## Parties

1. Plaintiff Essex Insurance Company is a Delaware corporation with its principal place of business in Glen Allen, Virginia. Essex is licensed to do business in Alabama and other states.

2. Defendant J&J Cable Construction, LLC was Essex's insured. J&J Cable is an Alabama limited liability company with its principal place of business in Opelika, Alabama. On information and belief, J&J Cable's sole member is a citizen of Alabama.

3. On information and belief, Dixie Electric Cooperative is a non-profit Membership Corporation organized under the laws of the State of Alabama. *See*, Ala. Code §37-6-1 *et seq*. On information and belief, Dixie Electric serves member-owners in eight Alabama counties. Dixie Electric purports to be an insured under an insurance policy issued by Essex to J & J Cable.

4. Marrell A. Crittenden, Jr. is an adult citizen resident of the State of Alabama and he is over age 19.

5. Courtney Bynum Crittenden is an adult citizen resident of the State of Alabama and she is over age 19.

6. M██ C██████ is a minor child of Marrell A. Crittenden, Jr. and Courtney Bynum Crittenden.

7. A▬▬ C▬▬▬ is a minor child of Marrell A. Crittenden, Jr. and Courtney Bynum Crittenden.

## Jurisdiction And Venue

8. This declaratory judgment action is brought pursuant to 28 U.S.C. § 2201 for a declaration of the rights and obligations of Essex under the commercial general liability policy, policy no. 3DM2159, issued by Essex to J&J Cable for the policy period November 12, 2012, to November 12, 2013 ("the CGL Policy").

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the citizenship of the plaintiff seeking declaratory judgment is diverse from each of the defendants, all of whom claim rights and interests under the CGL Policy, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

10. Venue is proper under 28 U.S.C. § 1391(b), because the CGL Policy was issued to J&J Cable in Opelika, Alabama, and the Crittendens allegedly suffered damage in Montgomery County, Alabama. Therefore, a substantial part of the relevant actions in connection with this Complaint for Declaratory Judgment took place within the Middle District of Alabama.

## Background Facts

### Underlying Action

11. This is an insurance coverage declaratory judgment action in which Essex seeks a declaration of its rights and obligations (if any) to defend and/or indemnify J&J Cable or Dixie Electric under a commercial general liability insurance policy in connection with a lawsuit seeking damages for the alleged bodily injury and property damage of Marrell A. Crittenden, Jr., Courtney Bynum Crittenden, and their two minor children, M▇ C▇▇▇ and A▇ C▇▇▇, following an overflow of sewage into the rental house they were occupying. The Crittendens' claims are stated in the lawsuit filed in the Circuit Court of Montgomery County, Alabama, and styled *Marrell A. Crittenden, et al. v. Dixie Electric Cooperative and J&J Cable Construction, LLC,* Civil Action Number CV-2014-900103. The Second Amended Complaint is referred to as the "Underlying Action."

12. The Underlying Action alleges:

   a. "On or about November 3, 2013 until approximately November 11, 2013, the sewage line was breached and thereafter raw sewage began to and continued to seep and invade their home ...." Second Am. Complaint at para. 10.

   b. Count One is styled "negligent/wantonness" and alleges Dixie Electric and J&J Cable "negligently and/or wantonly

4

   caused raw sewage to seep into the home of the plaintiffs." Second Am. Compl. at para. 17.

  c. Count Two is styled "nuisance" and alleges the defendants created a nuisance in the household of the plaintiffs at an unspecified time. Second Am. Compl. at para. 20.

  d. Count Three is styled "trespass" and alleges the defendants' activities constitute a trespass.

13. Evidence and pleadings in the Underlying Action show the property damage and bodily injury began after the CGL Policy expired at 12:01 a.m. on November 12, 2013:

  a. "On or about November 15, 2013 until approximately November 24, 2013, raw sewage began to and continued to seep and invade [the Crittendens'] home through bathroom toilets, under various walls within their dwelling place, the family living room, and various closets within the household and in hallways. The seepage of raw sewage made the home uninhabitable causing them to move, destroyed their possessions within the household and caused mental anguish, mental distress and other illnesses for the household members." Complaint, para. 9.

  b. After November 11, 2013, "raw sewage began to and continued to seep and invade [the Crittendens'] home through bathroom toilets .... The seepage of raw sewage made the home uninhabitable causing them to move, destroyed their possessions within the household and caused mental anguish, mental distress and other illnesses for the household members." First Am. Compl., para. 9. Also, Second Am. Compl., para. 10.

  c. "The events began as early as November 15, 2013." December 9, 2013, letter from the Crittendens' attorney.

  d. Testimony from Courtney Bynum Crittenden and Courtney Renée Bynum indicates the sewage first entered their home on November 16, 2013.

  e. The Crittendens' medical expert maintains M███ C███████ was exposed to raw sewage between November 16, 2013 and November 25, 2013.

14. The crosssclaim filed by Dixie Electric against J&J Cable in the Underlying Action alleges:

  a. On November 8, 2013 and/or November 11, 2013, J&J Cable struck and broke an underground sewer laterals providing service to two houses owned by the Anderson, one of which was occupied by the Crittendens. The break necessitated the subsequent repair of the sewer laterals. Crossclaim at para. 3.

  b. The damage to the underground sewer laterals caused property damage, including, but not limited to, a sewage back up in the house occupied by the Crittendens and a house owned by the Andersons. "The damage to the sewer lateral and continuing, related damage also caused loss of use of the property, as alleged by the owners and tenants of the property." Crossclaim at para. 3.

  c. The Crittendens claimed bodily injury, property damage, loss of use of property, and mental anguish resulting from the J&J Cable's rupture of the sewer lateral to the house they were renting. Crossclaim at para. 7.

  d. Dixie Electric demanded that J&J Cable defend and indemnify Dixie Electric in connection with this litigation and the claims by the Crittendens; J&J Cable refused. Crossclaim at para. 8.

  e. Ultimately, Dixie Electric's crossclaim seeks:

    i. A money judgment for all monies paid by Dixie Electric to the Andersons for repair of the broken sewer

laterals, the loss of use of property, and the cost to clean up the houses; and

ii. A money judgment for all future sums that Dixie Electric may owe the Crittendens, as well as Dixie Electric's attorneys' fees and costs.

15. Essex is defending J&J Cable under a reservation of rights in the Underlying Action; it is also defending J&J Cable against the crossclaim.

**Essex CGL Policy**

16. Essex issued the CGL Policy on an occurrence basis for the period from 12:01 a.m. on November 12, 2012, to 12:01 a.m. on November 12, 2013. All of the terms of the CGL Policy are incorporated here by reference.

17. The CGL Policy covers damages as a result of covered "property damage" and "bodily injury" caused by an "occurrence," subject to certain exclusions:

> SECTION I -COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this

7

insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

CGL Policy, form CG 00 01 12 07, page 1.

18. The CGL Policy contains a Total Pollution Exclusion Endorsement that states:

> **TOTAL POLLUTION EXCLUSION ENDORSEMENT**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion **f.** under Paragraph **2.**, **Exclusions of Section I – Coverage A –Bodily Injury And Property Damage Liability** is replaced by the following:
>
> This insurance does not apply to:
>
> **f. Pollution**
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants"; or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CGL Policy, form CG 21 49 09 99.

9

19. The term "pollutants" means "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." CGL Policy, form CG 00 01 12 07, page 5.

20. Pertinent sections of the Combination General Endorsement to the CGL Policy include:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> ....
>
> **B.** The following **Exclusions** are added:
>
> This insurance does not apply to:
>
> 1. Claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in fact contract.
>
> 2. Fines, penalties, and punitive or exemplary damages, or any expenses or any obligation to share such damages or repay another. However, this exclusion does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.
>
> 3. Professional liability, errors, omission, negligent acts, malpractice and/or acts of any type including rendering or failure to render any type of professional service, unless such coverage is specifically endorsed onto the policy.
>
> 4. "Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damages, including consequential injury, loss of damage, arising out of, caused or contributed to by:

10

....

    **d.** Asbestos, lead, silica dust, dust and/or toxic dust, "fungi", bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning:

        **(1)** Whether arising out of actual, alleged or threatened inhalation or, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from asbestos, lead, silica dust, dust and/or toxic dust, "fungi", bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning. This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, transportation, handling, storage, disposal or removal of same; and

        **(2)** Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects of same.

    Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects by any insured or by any other person or entity.

    "Fungi" as used herein mean any type or form of fungus, including mold or mildew and any

>    mycotoxins, spores, scents or byproducts produced or released by "fungi". However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.
>
>    ....

CGL Policy, form MEGL 0001 06 12, pages 1-2.

## Dispute of the Parties

21.  A real justiciable dispute exists between the parties as to the defense, indemnity, and coverage obligations, if any, of Essex under the CGL Policy.

## COUNT I
## Declaration of No Coverage Because Bodily Injury and Property Damage Occurred After the Expiration of the CGL Policy

22.  Essex incorporates the preceding paragraphs by this reference.

23.  The only damage suffered by the Crittendens was bodily injury and property damage that occurred after 12:01 a.m. on November 12, 2013.

24.  The time of occurrence is when the injury or damage first manifests, regardless of whether manifestations persisted after that. The Underlying Action alleges damages that first manifested after 12:01 a.m. on November 12, 2013. Second Am. Compl. para. 10.

25.  There is no admissible evidence to prove the Crittendens' property damage or bodily injury occurred during the policy period. On the other hand, there are letters and testimony from the parties and/or their

12

attorneys stating the date of the occurrence was November 15, November 16, November 19, or November 25.

26. The insuring agreement only covers "property damage" and "bodily injury" that occurs during the policy period which ended at 12:01 a.m. on November 12, 2013.

27. Therefore, Essex is not obligated to defend or indemnify J&J Cable or Dixie Electric and Essex has no obligations to the Crittendens.

## COUNT II
### Declaration of No Coverage for Bodily Injury or Property Damage Caused by Pollution

28. Essex incorporates the preceding paragraphs by this reference.

29. The property damage and bodily injury was caused by pollutants. Further, the injury and damages were caused by bacteria, organic pathogens, bio-organic growth, etc.

30. The allegations in the Underlying Action and in the crossclaim are not covered or are excluded from coverage under the CGL Policy because of the Total Pollution Exclusion.

31. Therefore, Essex is not obligated to defend or indemnify J&J Cable or Dixie Electric and has no obligation to the Crittendens.

## COUNT III
### Declaration of Right to Reimbursement

32. Essex incorporates the preceding paragraphs by this reference.

33. Essex is entitled to reimbursement of defense costs allocable to non-covered claims to the extent allowed by applicable by law.

34. Therefore, Essex is entitled to recover all payments it made in defense of J&J Cable in the Underlying Action.

## COUNT IV
### Declaration That Dixie Electric is Not an Insured

35. Essex incorporates the preceding paragraphs by this reference.

36. Dixie Electric is not a named insured under the CGL Policy. It also does not qualify as an "insured" under Section II – Who Is An Insured of the CGL Policy.

37. Therefore, Essex is not obligated to defend or indemnify Dixie Electric in the Underlying Action.

WHEREFORE, Essex respectfully requests that this Honorable Court declare and adjudge the controversy as follows:

A. Declare that there is no coverage under the CGL Policy for the claims asserted against J&J Cable or against Dixie Electric in the Underlying Action;

B. Declare that Essex does not owe a duty to defend or indemnify J&J Cable or Dixie Electric with respect to the Underlying Action;

C. Declare that Essex is entitled to recover all payments it made in defense of J&J Cable in the Underlying Action;

D.  Declare that there is no coverage under the CGL Policy for the Crittendens' injuries or damages, if any; and

E.  Grant any other relief that the Court deems just and equitable under the circumstances.

RESPECTFULLY SUBMITTED,

DATED: July 14, 2015

*/s/ Lane Finch*

F. LANE FINCH, JR.
(ASB-0027-I58F)
BRIAN C. RICHARDSON
(ASB-5241-H14U)
Attorneys for Essex Insurance Co.

**OF COUNSEL:**
HAND ARENDALL LLC
2001 Park Place
Suite 1200
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
LFinch@HandArendall.com
BRichardson@HandArendall.com

## PLAINTIFF REQUESTS THAT DEFENDANTS BE SERVED WITH THE SUMMONS AND COMPLAINT BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:

J&J Cable Construction, LLC
193 Lee Road 261
Opelika, AL 36804

Dixie Electric Cooperative
9100 Atlanta Highway
Montgomery, AL 36117

Marrell A. Crittenden, Jr.
125 Pebbles Court
Pike Road, AL 36066

Courtney Bynum Crittenden
125 Pebbles Court
Pike Road, AL 36066

932026