IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ESSEX INSURANCE COMPANY, )<br>)<br>     Plaintiffs, )<br>)<br>v. )<br>)<br>J&J CABLE CONSTRUCTION, LLC, et al., )<br>)<br>     Defendants. ) | CIVIL ACTION NO.<br>3:15-cv-506-WHA-WC |

**DEFENDANT DIXIE ELECTRIC COOPERATIVE'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Dixie Electric Cooperative ("Dixie Electric") files this brief in support of its motion for summary judgment (Docs. 83, 84, 85, and 92) and in reply to the opposition to Dixie Electric's motion for summary judgment filed by Plaintiff Essex Insurance Company ("Essex") (Doc. 95). Dixie Electric adopts and incorporates herein by reference its response in opposition to Essex's motion for summary judgment (Doc. 98), which addresses many of the factual and legal issues raised in Essex's opposition. As additional argument, Essex states[1] the following:

**I.     Caroline Torrence commenced her underlying state court litigation on November 1, 2015, not November 18, 2015.**

Essex argues that Caroline Torrence's "occurrence had to be after November 18, 2013; otherwise her underlying action would be barred by the two-year statute of limitations because she filed her lawsuit on November 18, 2015." Doc. 95, p. 3; *see also* Doc. 95, p. 11 (arguing that "Torrence is estopped to claim a date of occurrence for coverage purposes which bars her underlying action."). Essex is just plain wrong. Torrence commenced her underlying state court litigation by filing her complaint on **November 1, 2015** (not November 18). *See* Complaint

---

[1] Dixie Electric adopts and incorporates by reference its statement in footnote 1 of its memorandum brief (Doc. 92) as if fully stated herein.

243980.1

(Doc. 50-1, pp. 91-98). No party has alleged, testified, or argued that the sewer laterals were broken by J&J Cable Construction, LLC ("J&J"), or that the sewage backed up into the residences, before November 1, 2013. For those reasons, Essex's argument is clearly meritless.

II. **Essex has admitted that Dixie Electric's counterclaim against Essex presents a justiciable controversy concerning coverage for Dixie Electric's cross-claims in the underlying state court litigation.**

Essex argues that Dixie Electric's motion for summary judgment should be denied "for lack of a justiciable controversy" concerning Dixie Electric's counterclaim[2] against Essex. Doc. 95, p. 3. Essex also argues that Dixie Electric lacks standing to raise coverage issues in this case. *Id*. This Court should reject Essex's arguments because Essex has already admitted that there is justiciable controversy between it and Dixie Electric. Dixie Electric made the following allegation in its counterclaim against Essex in this case:

> 40. A real, justiciable dispute exists between Dixie and Essex as to the defense, indemnity, and coverage obligations of Essex under the 2012-2013 CGL Policy, and/or upon information and belief the 2013-2014 CGL Policy, relating to the claims and damages sought by Dixie in its cross-claims in the underlying state court litigation.

Doc. 50, p. 11, ¶ 40.

In its answer to Dixie Electric's counterclaim, Essex admitted the allegations of paragraph 40:

> 40. Admitted.

Doc. 51, p. 5, Answer to ¶ 40.

---

[2] Essex incorrectly described Dixie Electric's counterclaim against Essex (Doc. 50) as a "cross-claim." Doc. 95, p. 3.

Through its answer, Essex has admitted that there is a real, justiciable dispute (*i.e.*, a justiciable controversy) between it and Dixie Electric concerning whether Essex owes coverage for the claims and damages sought by Dixie Electric in its cross-claims against J&J in the underlying state court litigation. *Id.*[3] As such, Dixie Electric has standing to raise the issues addressed in its counterclaim against Essex, which are also raised in Dixie's Electric's motion for summary judgment. Given Essex's admission, it cannot now argue to the contrary in an attempt to avoid summary judgment in favor of Dixie Electric.

Additionally, it makes no sense that Essex could file this litigation naming Dixie Electric as a defendant, and expect Dixie Electric to be bound by the judgment of this Court concerning coverage, but then argue that Dixie Electric must sit quietly (in the corner perhaps) while Essex and J&J litigate the matter before this Court. Also, Essex apparently believes that it (the plaintiff) can move for summary judgment against Dixie Electric (a named defendant) on the coverage issues raised in its complaint and Dixie Electric's counterclaim, but Dixie Electric cannot move for summary judgment against Essex on those same coverage issues. Essex's rationale in that regard makes no sense.

Simply put, Essex's actual intent here is that it wants the Court to ignore Dixie Electric's persuasive arguments on the pertinent coverage issues. This is evident from the fact that Essex has not asserted in its answers (Docs. 17 and 30) or argued on summary judgment (Docs. 81 and 95) that the Crittendens or Torrence lack standing to assert their respective counterclaims (Doc. 12, pp. 5-8; Doc. 63, pp. 6-9). In any event, this issue is moot given that J&J has adopted Dixie Electric's arguments in response to Essex's motion for summary judgment. *See* Doc. 97, p. 9.

---

[3] Essex also never raised the issue of standing in its answer to Dixie Electric's counterclaim. *See generally*, Doc. 51. Essex has raised this argument for the first time on summary judgment, notwithstanding Dixie Electric's significant involvement and participation over the past several months with discovery (particularly depositions) in this case.

**III.     Dixie Electric is not estopped with respect to the occurrence date.**

Essex argues that "Dixie Electric is now estopped to unilaterally revise the settlement [between Dixie Electric and Dr. Jack Anderson] to select a date [of occurrence] when insurance coverage might be available." Doc. 95, p. 11. Essex's argument should be rejected for several reasons. First, the documents referenced by Essex are not settlement agreements, but rather are releases signed only by Dr. Jack Anderson. Doc. 95, pp. 23-26. Second, Essex misrepresents the language of the releases which state: "…the accident, casualty, or event which occurred **on or about** the 19th of November, 2013…" *Id*. (emphasis added). Third, the date of November 19, 2013, which was used in the releases and a Dixie Electric record, is believed to have been based on the date that J&J returned the unused electrical conduit to Dixie Electric after the work was completed. *See* Martha Singleton (2014) Depo. at 53:23-55:8 (Doc. 85-11, p. 15). Fourth, discovery in the underlying state court litigation and this litigation has revealed that the November 19, 2013 date is simply wrong, and there is no basis to hold Dixie to a date that is simply not supported by the evidence. In fact, Essex's own arguments regarding the "occurrence" date, while incorrect, are based on an earlier date, November 16, 2013. *See, e.g.,* Doc. 95, pp. 2, 4, 10, and 15. Fifth, Essex has failed to show or submit any evidence of detrimental reliance on its part with respect to the November 19, 2013 date.

Finally, Essex's argument is disingenuous because, following the same reasoning, Essex would be estopped to deny that the "date of loss" is anything other than November 6, 2013, which is the "date of loss" used throughout Essex's Claim Log:

```
                                            Claim-C031616-Note102
January 3, 2014 08.03.00 AM
LDARDEN
C031616
3DM2159-0
Claimant:   Marrell Crittenden , Jr
DOL:        November 06, 2013
Insured:    J & J Cable Construction, LLC

Title:  New Loss
Note: New Loss
```

*See* Doc. 97-1, pp. 1-28 (highlight added).

For the above reasons, this Court should reject Essex's estoppel argument.

**IV.   The Crittendens and Torrence lost the use of the sewer laterals.**

Essex argues that the Crittendens and Torrence were not damaged the day that the sewer laterals were breached. Doc. 95, p. 11. Essex is wrong. The Crittendens and Torrence leased the entire premises at 8212 Ryan Ridge Loop and 8216 Ryan Ridge Loop, which included the full use of functional and operational sewer laterals (*i.e.*, a pipe that allows residential sewage to flow from the house, off the property, and into the City of Montgomery's sewer system). The Crittendens and Torrence lost the full use of the sewer laterals (*i.e.*, the pipe no longer allowed the residential sewage to flow to the City's sewer system) as soon as they were broken by J&J within the Policy period,[4] regardless of whether the breach was known at that time, regardless of who was required to maintain the laterals, and regardless of whether the Crittendens and Torrence could still take a shower/bath or use the toilet inside the residence, as argued by Essex. *See* Doc. 95, pp. 10-11, 13, 15-16.

The Policy's definition of "property damage" expressly states that loss of use resulting from physical injury to tangible property "shall be deemed to occur at the time of the physical injury that caused it." Doc. 10-8, p. 28 (Section V - Definitions ¶ 17a). Here, the physical injury

---

[4] *See* Weir Aff., ¶¶ 4-6 (Doc. 85-2, pp. 2-3); Jerry Noblitt (2014) Depo. at 146:21-147:13 (Doc. 85-3, p. 38).

that caused the loss of use of the sewer laterals was the breaking of the sewer laterals by J&J within the Policy period. *See* Weir Aff., ¶¶ 4-6 (Doc. 85-2, pp. 2-3); Jerry Noblitt (2014) Depo. at 146:21-147:13 (Doc. 85-3, p. 38). As such, the "loss of use" of the sewer laterals occurred during the Policy period.

## CONCLUSION

Based on the foregoing, Dixie Electric is entitled to summary judgment in its favor on its counterclaim against Essex. Accordingly, Dixie Electric's motion for summary judgment should be granted, and Essex's motion for summary judgment should be denied.

Respectfully submitted this the 30th day of March, 2016.

                                     */s/Louis M. Calligas*
                                     One of the Attorneys for Defendant
                                     Dixie Electric Cooperative

**OF COUNSEL**:
John G. Smith (ASB-8146-T68J)
jgsmith@balch.com
Louis M. Calligas (ASB-4907-O73C)
lcalligas@balch.com
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon any CM/ECF participants electronically on this the 30th day of March, 2016:

| | |
|---|---|
| F. Lane Finch, Jr.<br>Lane.Finch@swiftcurrie.com<br>Brian C. Richardson<br>brian.richardson@swiftcurrie.com<br>Swift Currie McGhee and Hiers, LLP<br>2 North 20th Street, Suite 1405<br>Birmingham, AL 35203<br>*Attorneys for Essex Insurance Company* | Robert Simms Thompson<br>rstpc@aol.com<br>Tiffany Nichelle Johnson-Cole<br>tnijohnson@aol.com<br>Robert Simms Thompson, PC<br>P.O. Box 830780<br>Tuskegee, AL 36083<br>*Attorneys for the Crittendens and Caroline Torrence* |
| Tyrone C. Means<br>tcmeans@meansgillislaw.com<br>H. Lewis Gillis<br>hlgillis@meansgillislaw.com<br>Kristen J. Gillis<br>kjgillis@meansgillislaw.com<br>Means Gillis Law, LLC<br>P.O. Box 5058<br>Montgomery, AL 36103<br>*Attorneys for the Crittendens and Caroline Torrence* | David E. Allred<br>dallred@allredpclaw.com<br>D. Craig Allred<br>callred@allredpclaw.com<br>Allred & Allred, P.C.<br>7030 Fain Park Drive, Suite 9<br>Montgomery, Alabama 36117<br>*Attorneys for J&J Cable Construction, LLC* |

                                                        */s/Louis M. Calligas*
                                                        Of Counsel