## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

Essex Insurance Company,    )
     Plaintiff,          )
                       )
v.                      )     Case No.:  3:15-cv-506-WHA
                       )
J&J Cable Construction, LLC, *et al.*  )     **OPPOSED**
     Defendants.           )
                       )
And Related Actions          )

## ESSEX INSURANCE COMPANY'S REPLY TO
## THE CRITTENDEN AND TORRENCE OPPOSITION TO
## ESSEX'S MOTION FOR SUMMARY JUDGMENT

Essex Insurance Company replies to the Crittendens' and Torrence's Response in Opposition to Essex's Motion for Summary Judgment (Doc. 100) for the following reasons and based on the evidence cited in Essex's Motion for Summary Judgment and oppositions to motions for summary judgment, which are incorporated by this reference.  Docs. 81, 82, 95, and 96.  More specifically:

1. The Essex Total Pollution Exclusion Bars Coverage for Damages Caused by Exposure to Raw Sewage.

2. The "Property Damage" and "Bodily Injury" Did Not Occur Until After the CGL Policy Expired.

# I.    INTRODUCTION

Essex has thoroughly briefed the issues in this case in its Motion for Summary Judgment (Doc. 81), Opposition to Dixie Electric's Motion for Summary Judgment (Doc. 95), and Opposition to J&J Cable Construction's Motion for Summary Judgment (Doc. 96), which are incorporated by reference herein.  The purpose of this Reply Brief is to target new and/ or restructured arguments and positions taken by the Crittendens and Torrence in their Opposition to Essex's Motion for Summary Judgment (Doc. 100).  Essex does not waive any arguments or positions made in its Motion for Summary Judgment or Oppositions to Summary Judgment, which have sufficiently addressed the arguments and positions raised in their Opposition to Essex's Motion for Summary Judgment.

# II.    BACKGROUND

There is only one real factual dispute in this case, and that is one manufactured by Marrell Crittenden's changed testimony. In 2014, he clearly testified he did not know when he was first exposed to the sewage backup.  In 2016, after the importance of the trigger date was apparent to all, he changed his testimony to say he was first exposed on or before November 11, 2013. As this Court is well aware, a party cannot contradict their sworn testimony to create a question of fact to avoid summary judgment. *Hines v. Trinity Contractors, Inc.*,

154 So. 3d 1014, 1021 (Ala. Civ. App. 2014), citing *McGough v. G & A, Inc.*, 999

So. 2d 904 (Ala. Civ. App. 2007).

Once that manufactured factual dispute is dispensed with, the parties are in

agreement with the following crucial facts:

1.      J&J Cable damaged two sewer laterals, probably between

November 8 and 11, 2013.

2.      One of the two sewer laterals ran to the house occupied by

tenants Marrell Crittenden, Courtney Crittenden, and their two minor

daughters, M.C. and A.C.  The other sewer lateral ran to the house

occupied by tenant Caroline Torrence.

3.      Courtney Crittenden experienced a sewer backup for the first

time on November 16, 2013.  Prior to that, she was utterly unaware of

damage to the sewer lateral. Prior to that she suffered no bodily injury

or property damage.

4.      M.C. and A.C. experienced a sewer backup for the first time on

November 16, 2013.  No evidence was ever offered that prior to that

date either child suffered bodily injury or property damage.

5.      Caroline Torrence does not know if she experienced a sewer

backup for the first time on November 16, 2013.  Prior to that, she

3

was utterly unaware of damage to the sewer lateral. Prior to that she suffered no bodily injury or property damage.

Torrence testified she had no problems with the plumbing except for the single incident sometime in November. Deposition at 16:23-17:14.  She testified "I don't recall the exact date" when she experienced the sewer backup. Torrence Deposition, p. 18:20-21, excerpts attached hereto as Exhibit A.  She was only able to testify to an "around-about" date of "the beginning of November of 2013." Exhibit A, pp. 40:16-41:7.  She testified she could not be any more specific than that.  Exhibit A, p. 41:8-23.

All defendants rely on the *Armstrong* case for the proposition that sewage is not a pollutant. For example, J&J Cable specifically asserts the Alabama Supreme Court ruled in Armstrong that that human waste is not a pollutant. Doc. 97, 2.

However, the Essex policy contains a Total Pollution Exclusion applying to "'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the … discharge, … release or escape of 'pollutants' at any time."  The only causative agent for the claims of each Crittenden and for Torrence is the exposure to raw sewage.  This is conceded in J&J Cable's brief. Doc. 97, 3. Marrell Crittenden claims he suffered bodily injury and property damage when he was exposed to raw sewage.  Courtney Crittenden claims she suffered bodily injury

and property damage when she was exposed to raw sewage.  Both Crittenden children claim bodily injury, and, perhaps, property damage, as a result of their exposure to raw sewage. Caroline Torrence claim she suffered bodily injury and property damage when she was exposed to raw sewage.

J&J Cable's argument the defined term "pollutant" does not include "human waste" is contradicted by the definition itself which states "'Pollutants' mean any solid [or] liquid … irritant or contaminant, including … waste."  Doc. 97, 3; compare policy at Doc. 82-4, p. 13 of 14.

As stated in Essex's Motion For Summary Judgment, the Total Pollution Exclusion provides the insurance policy "does not apply to … '[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' [i.e., 'any solid, liquid, [or] gaseous … irritant or contaminant, including … waste'] at any time."  The underlying claims all arise from the overflow of raw sewage (including human waste and feces) which each claimant encountered in November 2013. *See also* Essex's discussion in Doc. 81, pp. 9, 11, 13, and 22-27.

# III.   ARGUMENT

## A.   The Essex Total Pollution Exclusion Bars Coverage for Damages Caused by Exposure to Raw Sewage.

Essex has provided substantial evidence, and supporting case law, showing that the Total Pollution Exclusion in the J&J Cable Construction, LLC insurance policy bars coverage for damages caused exclusively by raw sewage containing human waste.  There is no doubt the claims by each Crittenden and Torrence all arose from their individual exposure to human waste that initially backed up in to their rental houses on or about November 16, 2013.

The defendants argue that the Essex Total Pollution Exclusion  is limited to industrial pollution and contamination based exclusively on *Armstrong*.  However, as discussed at length in Essex's Motion for Summary Judgment, the Qualified Pollution Exclusion in *Armstrong* is much narrower than the Absolute Pollution Exclusion in the Essex policy.  Thus, *Armstrong*, which interpreted an entirely different pollution exclusion, does not support the defendants' position.  The United States District Court for the Middle District explained that absolute pollution exclusions are markedly different from the qualified pollution exclusions found in *Armstrong*.  *Shalimar Contractors, Inc. v. Am. States Ins. Co.*, 975 F. Supp. 1450 (M. D. Ala. 1997).

Moreover, Essex's position is consistent with current Alabama law. The Alabama Department of Environmental Management, Water Division (hereinafter "ADEM") defines "sewage" as:

> water carried human wastes from residences, buildings, industrial establishments or other places, together with such ground surface, storm or other waters as may be present.

ADEM Admin. Code r. 335-6-5-.02 (nn). ADEM's definition of "Pollutant" includes "sewage".

> "Pollutant" includes but is not limited to dredged spoil, solid waste, incinerator residue, *sewage*, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked, or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.

ADEM Admin. Code r. 335-6-5-.02 (gg) (emphasis added).

Therefore, based on Essex's previous motions, the contemporaneous motions filed herewith, and the arguments made in this Motion, the Essex total pollution exclusion applies, is unambiguous, and bars coverage for the "bodily injury" and "property damages" asserted in the underlying Crittenden and Torrence state court actions. As such, Essex is entitled to summary judgment in this case.

**B.** **The "Property Damage" and "Bodily Injury" Did Not Occur Until After the CGL Policy Expired.**

As shown in Essex's Motion for Summary Judgment at pages 13-20, each individual claim must occur during the policy period and they simply did not.

7

## 1.    Individual Claims Must Be Considered Separately

A proper understanding of the insurance agreement is essential to enforcement of the policy. The insuring agreement provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Provided, however,

> b. This insurance applies to "bodily injury" and "property damage" only if:
> ….
> (2) The "bodily injury" or "property damage" occurs during the policy period;
> ….

Exhibit V of Doc. 82, p. 1.

It is necessary to look at each individual claim of damage separately because Alabama law has long held that the date of occurrence is not when the wrongful act is committed (here, breach of the sewer lateral out in the street), [b]ut the time when the complaining party was actually damaged. *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995). The Court must look at when Courtney Crittenden was actually damaged, when M.C. was actually damaged, when A.C. was actually damaged, when Marrell Crittenden was actually damaged, and when Caroline Torrence was actually damaged.  That required analysis shows each claimant's individual damages occurred after the policy expired.

There is no evidence that anyone-not the Crittendens and not Torrence-lost use their plumbing before November 12, 2013.  Moreover, the Crittendens and Torrence offer no admissible evidence that prior the expiration of the policy, any of the Crittendens experienced a plumbing problem or was exposed to raw sewage and human waste. Additionally, there is no evidence, or allegations, that the raw sewage immediately contaminated the ground. Without that evidence, the insured fails to meet its burden of establishing that each claim is covered by the policy. *See Colonial Life & Acc. Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967).

In the end, the Court has a lot of evidence that the Crittendens were exposed to raw waste on November 16, 2013. The Court has some evidence, which is a combination of speculation, contradictory testimony, and hearsay evidence, as to when Marrell Crittenden was exposed to raw waste before November 16th. That type of "evidence" does not satisfy the insured's burden of establishing that each of the four Crittendens' claims is covered.

**C.   The Triggering "Occurrences" were not the Initial Damage to the Sewer Laterals, the Immediate Loss of Use of Sewer Systems, and the Immediate Exposure of the Land to Raw Sewage.**

As an initial matter there is no evidence whatsoever that the Crittendens or Torrence lost immediate use of their sewer systems.  That is counsel's argument not a fact supported by evidence.  In fact, the evidence strongly shows that the Crittendens were using their "sewer system" without incident until or about

9

November 16, 2013. Furthermore, there is no testimony or other evidence that shows that the raw sewage came into contact with the land and when exactly this would have occurred.  Moreover, the Crittendens and Torrence made no claims in their underlying actions for damages to the sewer laterals and damage to the land.

**D.      Objection to Crittendens' and Torrence's Statement Relevant Undisputed Facts.**

Essex objects to the Crittendens' and Torrence's reference to Marrell Crittenden's January 2016 contradictory testimony and the misrepresentation that "the Crittendens" testified that they "first began noticing 'water irregularities and discoloration when the men were working." *See* Doc. 100, p. 3.  That assertion misrepresents the evidence.  Courtney Crittenden never testified that the sewage backup occurred before November 16, 2013.  Moreover, her only reference to any possible sewage backup before November 16th was some unspecified time earlier in the week based entirely on something Marrell told her, which is hearsay and inadmissible.

Additionally, Marrell's 2016 deposition testimony directly contradicts his prior testimony where he testified that he was unsure when he was first exposed to the sewage backup and when it first occurred.  *See* Exhibit O (Doc. 82), 25:21-25:16; Exhibit Q (Doc. 82), 46:4-46:20 of Doc. 81.  Under Alabama law, an issue of fact cannot be created by a party who testifies in a way that directly contradicts that party's prior testimony.  *Hines v. Trinity Contractors, Inc.*, 154 So. 3d 1014,

1021 (Ala. Civ. App. 2014), citing *McGough v. G & A, Inc.*, 999 So. 2d 898, 904 (Ala. Civ. App. 2007).  As such, Marrell Crittenden's contradictory January 2016 testimony, that sewage backup started on November 11, 2013, cannot create an issue of material fact.

Essex objects to the contention, which is without evidentiary support, that the Crittendens lost use of the sewer lateral that serviced their house on November 11, 2013. *See* Doc. 100, p. 1, 4-5.  The Crittendens testified that they used the showers, sinks, and tubs through November 16, 2013.  *See* Courtney Crittenden's January 2016 Deposition, pp. 15:9-15:15, 30:3-31:15, Doc. 83, Exhibit F; Doc. 95, Exhibit E, pp. 42:8-43:5.

Essex further objects to the contention that the land was immediately exposed to raw sewage.  Doc. 100, p. 1, 4-5.  There is no testimony whatsoever that supports this statement.

**E.    The Torrence and Crittenden Complaints in the Underlying Action Do Not Allege "Bodily Injury" and "Property Damage" That Occurred during the Policy Period.**

**1.    The Crittendens' Amended Complaints Do Not Allege "Property Damage" and "Bodily Injury" that Occurred During the Policy Period**

The Crittendens' original Complaint asserted that:

> ***On or about November 15, 2013 until approximately November 24, 2013, raw sewage began to and continued to seep and invade [the Crittendens'] home*** through bathroom toilets, under various walls within their

11

> dwelling place, the family living room, and various closets within the household and in hallways. The seepage of raw sewage made the home uninhabitable causing them to move, destroyed their possessions within the household and caused mental anguish, mental distress and other illnesses for the household members.

Compl., Exhibit A (Doc. 82), ¶ 9;  emphasis added.

Their Amended Complaints added the sewage line was breached on or about November 3, 2013 until approximately November 11, 2013, and ***thereafter*** raw sewage began to seep into their house.  Taken together, the Crittendens allege the sewer lateral was broken between November 3 and 11 and then on or about November 15 to about November 24, 2013, raw sewage backed into their home.

### 2.    The Allegations in the Torrence Complaint Does Not Trigger Essex's Duty to Defend J&J Against These Claims

Torrence could not offer any testimony as to when the sewage backup into her home first occurred.  Exhibit N (Doc. 82), 18:16-19:2.  She does not know where the dates in paragraph 7 of her complaint come from, to wit "On or about or between November 3, 2013, until approximately sometime after November 11, 2013, the sewage line at plaintiff's home was breached."  Exhibit N (Doc. 82), 55:11-55:21.  In fact, she could not testify that the sewage line was in fact breached during that time frame.  Exhibit N (Doc. 82), 56:7-56:9, 56:13-56:18.  She testified her claim is based on:

> the pipe breaking, and it [feces; sewage with human waste in it] coming out of my toilet and my tub and my

> showers.  Because it's -- it's an incident.  I have not had
> any personal plumbing problems other than this incident
> as a result of this incident with them breaking the pipe.

Exhibit N (Doc. 82), 17:8-17:14.

She simply does not recall the date of the sewage overflow.  Exhibit N (Doc. 82),  18:4-18:21, 40:16-21, and 41:5-41:11. She does not recall when the pipe was broken.  Exhibit N (Doc. 82), 18:12-18:15. Prior to the sewage overflow, Torrence had no problems with the plumbing system at all.  Exhibit N (Doc. 82), 73:14-73:19.

Furthermore, any negligence or nuisance claims asserted by Torrence for damage occurring before November 18, 2013, are barred by the two-year statute of limitations.  *See* ALA. CODE § 6-2-38 (1975).  Thus, her claims, if actionable now, had to occur after November 18, 2013.

## F.    Another Red Herring.

Finally, the Crittendens and Torrence pointed to the insurer's claim notes which list a November 6, 2013, date of loss. Doc. 97, 6-7.  They asserted the claim notes create a jury question as to whether the proper date of loss is November 6, 2013. First of all, J&J Cable has repeatedly its asserted that it began its work on November 8, 2013. Obviously, the true date of loss could not possibly be November 6, 2013. Secondly, the defendants failed to inform the Court of testimony that the November 6 date of loss listed in the claim notes is, in essence,

an administrative entry and has no factual basis whatsoever. That information comes from an ACORD loss notice. Deposition of Stephanie Doyle, 12:19-13:18, attached hereto as Exhibit B. The person who entered the November 6, 2013, date of loss into the claim system is a clerical person. Exhibit B, 13:19-14:3. Once that date of loss is assigned to the file, it cannot be changed in the claim diary. Exhibit B, 14:9-25; see also 29:5-30:11 ("That's a system-generated printout, and as I told you we can't go in and change that"). The adjuster on this claim, Stephanie Doyle, made that clear in her testimony and also made clear that Dixie Electric's attorney indicated the date of loss was November 19 and "we had several different dates and really didn't-were not able to clarify what [was] the [correct] date that the damage was done." Ex. A, 27:22-28:11. She also testified all of the evidence she considered showed the Crittendens were damaged from November 15 forward. Exhibit B, 45:13-17.

## IV.   CONCLUSION

WHEREFORE, Essex respectfully requests that this Honorable Court declare and adjudge Essex does not owe a duty to defend J&J Cable with respect to the Underlying Actions and declare that there is no coverage under the CGL Policy for the Crittendens' or Torrence's claims or Dixie Electric's cross-claims against J&J Cable; and grant any other relief that the Court deems just and equitable under the circumstances.

RESPECTFULLY SUBMITTED,

DATED:  March 30, 2016          */s/  Lane Finch*
                               F. LANE FINCH, JR.
                               (ASB-0027-I58F)
                               BRIAN C. RICHARDSON
                               (ASB-5241-H14U)
                               Attorneys for Essex Insurance Co.


**OF COUNSEL:**
SWIFT, CURRIE, McGHEE & HIERS, LLP
2 North 20th Street, Suite 1405
Birmingham, AL 35203
(205) 314-2401
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2016, I have served the foregoing by electronic filing through the Court's CM/ECF system the following attorneys of record:

John G. Smith
Louis M. Calligas
BALCH & BINGHAM, LLP
P. O. Box 78
Montgomery, AL 36101-0078

Tyrone C. Means
H. Lewis Gillis
MEANS GILLIS LAW, LLC
P. O. Box 5058
Montgomery, AL 36103

Robert Simms Thompson
Tiffany N. Johnson
THE LAW OFFICES OF ROBERT
SIMMS THOMPSON, PC
P. O. Box 830780
Tuskegee, AL 36083

David E. Allred
D. Craig Allred
ALLRED & ALLRED, PC
7030 Fain Park Drive, Suite 9
Montgomery, AL 36117

*/s/  Lane Finch*
Of Counsel

# EXHIBIT A

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE MIDDLE DISTRICT OF ALABAMA

3                     EASTERN DIVISION

4

5     CASE NO:   3:15-cv-506-WHA

6

7     ESSEX INSURANCE COMPANY,

8          PLAINTIFF,

9          V.

10    J&J CABLE CONSTRUCTION, LLC, ET AL.,

11         DEFENDANTS.

12

13              S T I P U L A T I O N

14

15         IT IS STIPULATED AND AGREED by and

16    between the parties through their respective

17    counsel, that the deposition of CAROLINE

18    TORRENCE may be taken before Rena' Messick

19    Lanier, Certified Court Reporter and Notary

20    Public for the State of Alabama at Large, at

21    the offices of Means Gillis Law, LLC, at 60

22    Commerce Street, Suite 200, Montgomery,

23    Alabama  36104, on the 5th day of February

1    A. Sewage.

2    Q. Sewage?

3    A. Yes.

4    Q. With human waste in it?

5    A. Yes.

6    Q. So I'll call that sewage.  And when I

7       talk about the sewage, I'm talking about

8       whatever backed up out of the toilet --

9    A. Yes.

10   Q. -- tub and shower, okay?

11   A. Raw sewage, yes.

12   Q. Now, in terms of the broken pipe, when

13      did you discover that the pipe was

14      broken?

15   A. I don't recall.

16   Q. And where did the sewage backup first

17      occur?  Was it the toilet?  The tub?  A

18      shower?  Or some combination?

19   A. It was all at once.

20   Q. Okay.  And when did that occur?

21   A. I don't recall the exact date.

22   Q. Sitting here today, do you have an

23      actual recollection of the event even if

1       doctors after the incident in question.

2            MR. FINCH:  Right.

3            MR. GILLIS:  I haven't heard you ask

4       any question about whether the incident

5       in question occurred.

6            MR. FINCH:  No, sir.  I did.  I

7       specifically --

8            MR. GILLIS:  Perhaps I missed it

9       then.

10           MR. FINCH:  I specifically asked her

11      about this incident.

12           MR. GILLIS:  I know you asked her

13      about the incident, but in terms of the

14      date.

15  A.  Of when it happened?

16  Q.  Yes.   I said -- I asked you when this

17      backup happened, and you said you did

18      not recall the exact date.

19  A.  The exact date, no.

20  Q.  Okay.

21  A.  But I can tell you an around-about.

22           MR. GILLIS:  Just listen.

23  BY MR. FINCH:

1    Q. What is the around-about then?

2        MR. GILLIS:   Listen to his question

3    now.

4  BY MR. FINCH:

5    Q. What is the around-about date?

6    A. It was in the beginning of November of

7    2013.

8    Q. Can you narrow it down any more than

9    that?

10   A. I can't recall.  I just know it was in

11   the beginning of November.

12   Q. And to make sure I've followed up as

13   much as necessary, what do you mean by

14   the beginning of November?

15       MR. GILLIS:   If you're able to give

16   a better date than that, tell him.  If

17   you're not able to, tell him.

18   A. I don't know.  I don't know the exact

19   date.  I just know it was the beginning

20   of November.

21   Q. And there's no way for you to be more

22   specific than that?  Is that true?

23   A. True.

# EXHIBIT B

1

1           IN THE UNITED STATES DISTRICT COURT

2             FOR MIDDLE DISTRICT OF ALABAMA

3                    EASTERN DIVISION

4     -------------------------------x

5     ESSEX INSURANCE COMPANY,            :

6                      Plaintiff,         :

7        v.                               : Case No.:

8     J&J CABLE CONSTRUCTION, LLC,        : 3:15-CV-506-WHA-WC

9     et al.,                             :

10                     Defendants.        :

11    -------------------------------x

12    (Caption continued on next page)

13

14         Deposition of ESSEX INSURANCE COMPANY,

15      By and through its Designated Representative,

16                   STEPHANIE DOYLE

17                  Richmond, Virginia

18               Wednesday, March 23, 2016

19                      1:58 p.m.

20

21

22

23    Job No.: 107766

24    Pages: 1 - 98

25    Reported by: Katherine Schilling

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

2

```
 1     (Caption continued from previous page)

 2    -------------------------------x

 3    J&J CABLE CONSTRUCTION, LLC,     :

 4    et al.,                          :

 5                        Counterclaim- : Case No.:

 6                        Plaintiff,    : 3:15-CV-506-WHA-WC

 7       v.                            :

 8    ESSEX INSURANCE COMPANY,         :

 9                        Counterclaim- :

10                        Defendant,    :

11    -------------------------------x

12

13        Deposition of ESSEX INSURANCE COMPANY, by and

14    through its designated representative, Stephanie

15    Doyle, held at the offices of:

16

17           Regus - Downtown Richmond

18           6802 Paragon Place

19           Suite 410

20           Richmond, Virginia 23230

21           (804) 441-6000

22

23        Pursuant to Notice, before Katherine Schilling,

24    Notary Public in and for the Commonwealth of

25    Virginia.
```

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

3

1                    A P P E A R A N C E S

2          ON BEHALF OF THE PLAINTIFF, ESSEX INSURANCE

3          COMPANY:

4               LANE FINCH, ESQUIRE

5               SWIFT, CURRIE, MCGHEE & HIERS, LLP

6               2 North 20th Street

7               Suite 1405

8               Birmingham, Alabama 35203

9               (201) 314-2403

10

11          ON BEHALF OF THE DEFENDANTS, J&J CABLE

12          CONSTRUCTION, LLC, et al.:

13               DAVID ALLRED, ESQUIRE

14               ALLRED & ALLRED, P.C.

15               7030 Fain Park Drive

16               Suite 9

17               Montgomery, Alabama 36117

18               (334) 396-9200

19               (Present via videoconference)

20

21

22

23

24

25

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

4

1    A P P E A R A N C E S   C O N T I N U E D

2    ON BEHALF OF THE DEFENDANT, DIXIE ELECTRIC

3    COOPERATIVE:

4         LOUIS CALLIGAS, ESQUIRE

5         BALCH & BINGHAM, LLP

6         105 Tallapoosa St., Suite 200

7         Montgomery, Alabama 36104

8         (334) 269-3127

9         (Present via videoconference)

10

11   ON BEHALF OF THE DEFENDANT, MARRELL A.

12   CRITTENDEN, JR. AND COURTNEY BYNUM CRITTENDEN:

13        LEWIS GILLIS, ESQUIRE

14        MEANS GILLIS LAW, LLC

15        3121 Zelda Court

16        Montgomery, Alabama 36106

17        (334) 270-1033

18        (Present via videoconference)

19

20   ALSO PRESENT:

21        Kelly Bernstein

22

23

24

25

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

5

1                    C O N T E N T S

2    EXAMINATION OF STEPHANIE DOYLE              PAGE

3         By Mr. Allred                          6

4         By Mr. Calligas                        63

5         By Mr. Gillis                          85

6         By Mr. Allred                          89

7

8

9

10                   E X H I B I T S

11              (None marked)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

6

1                    P R O C E E D I N G S
2    Whereupon,
3                    STEPHANIE DOYLE,
4    being first duly sworn or affirmed to testify to the
5    truth, the whole truth, and nothing but the truth,
6    was examined and testified as follows:
7          EXAMINATION BY COUNSEL FOR THE DEFENDANTS,
8            L&L CABLE CONSTRUCTION, LLC, ET AL.
9    BY MR. ALLRED:
10         Q    Would you tell us your full name, please,
11   ma'am.
12         A    Stephanie Doyle.
13         Q    Okay.  I believe under the court rules --
14   the court wants to know if you want to read and sign
15   your deposition.  If you want to waive signature or
16   what.  What do you all want to do on that end?
17              MR. FINCH:  We will read and sign.
18              MR. ALLRED:  Okay.  And please give the
19   court reporter an address where they need to send
20   the transcript to, to go get that done.
21              MR. FINCH:  I did.
22              MR. ALLRED:  Okay.  Thank you.
23         Q    Ms. Doyle, what is your position with
24   Essex?
25         A    I actually work for Markel Services

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

12

```
 1          A    If I recall correctly, the first notice
 2    included an e-mail cover from the agent that also
 3    had a brief e-mail from J&J.  And it had a few other
 4    attachments as well.
 5          Q    All right.  I don't believe that's been
 6    produced to us.  What is -- those documents, are
 7    they kept up within your claims department --
 8               MR. FINCH:  I'll object to the form of
 9    that question --
10          Q    -- for the file?
11               MR. FINCH:  -- and your statement that
12    anything has not been produced.
13          Q    Okay.  But there was an e-mail that had
14    the date 11/6/2013; is that correct?
15          A    I don't remember exactly what the e-mail
16    said, but my notes say, appears the insured did the
17    work on 11/6.  So, if I recall correctly, the e-mail
18    from the insured indicated that.
19          Q    Okay.  All right.  And so that would
20    be -- with an ACORD form of an initial loss notice
21    going back up there to January 3rd at 8:03, that
22    also has a date of loss, November 6, 2013; correct?
23               MR. FINCH:  Object to form.
24          Q    Ma'am?
25               MR. FINCH:  What -- what document are you
```

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

13

1    asking has that date?  Because you mentioned two or

2    three.

3                MR. ALLRED:  No.  I did not mention two

4    or three.  I'm talking about -- we're still on

5    page 1187.

6                MR. FINCH:  Okay.  If that's the only

7    document you're offering to, that's fine.

8                MR. ALLRED:  Wait a minute.  And we had

9    gotten down to 10:00 o'clock on January 3rd, which

10   there's only three entries on there.  And I had

11   asked her about the date of loss, 11/6/13, where she

12   got that.

13               She gave me an answer.  Then I said,

14   let's go back up there to -- on January 3rd at 8:03.

15   BY MR. ALLRED:

16        Q    And the question was, that also lists a

17   date of loss, November 6, 2013; isn't that correct?

18        A    Yes, it does.

19        Q    Okay.  And based on your review of the

20   claims diary, someone at Markel or Essex had

21   information that the loss had occurred on November

22   6, 2013, to make that entry; is that correct?

23        A    That -- the person who makes that entry

24   is a clerical person in our operations department.

25   I'm not sure where they would get the dates or where

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

14

1      they -- because part of my job is to review the

2      documentation with the claim and determine the

3      correct date of loss.

4           Q      Well, we can agree they don't just pull

5      it out of thin air.

6           A      No, no.  I mean, I'm assuming they read

7      it on one of the items that were attached to the

8      e-mail.

9           Q      All right.  And in the claim diary, if

10     you're going on down through there on the claim

11     diary, how do you go back and make corrections to it

12     or make edits in the claim diary?  What's that

13     procedure called?

14          A      You can't change the claim diary.

15          Q      Okay.  So you don't have a procedure

16     where this can be edited, say, much down the line?

17     You go back and edit an entry that was made months

18     prior?

19          A      No, sir.

20          Q      You can't do that?

21          A      No, sir.

22          Q      The system --

23          A      No.

24          Q      The system won't let you?

25          A      No, sir.

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

27

1       Q    Is -- have you considered that issue

2  before about damage to the sewer lines as being part

3  of the property damage claim of the Totes?

4       A    No.

5       Q    I don't see -- I don't see any claims

6  down there.  So you haven't?

7       A    No.

8       Q    All right.  Going over to January 14 of

9  2014, at 4:25 -- that's page 1190.  I'm sorry.

10      A    Okay.

11      Q    And you're still -- at this point are you

12  trying to decide on whether you've got coverage?

13  Are you trying to decide on defending the claim?  Or

14  what are you trying to do at that date, January 14,

15  2014?

16      A    If I recall correctly it wasn't in suit

17  yet at that point.  It was a claim we were

18  investigating, both coverage, liability.

19      Q    So you're still investigating coverage on

20  January 14th; right?

21      A    And liability, yes, sir.

22      Q    All right.  And then you get a -- a call

23  from Teresa Minor, Dixie Electric's lawyer, and she

24  gives you a date of November the 19th.  And you

25  noted that you asked her what she meant by, quote,

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

28

```
 1    damage done, end of quotes.  And she said she really

 2    didn't know.  That's what you indicated; correct?

 3         A    Yes, sir.

 4         Q    So you wouldn't take that statement from

 5    Teresa Minor to be the date of the loss, would you,

 6    if she's telling you the damage was done on a

 7    certain date, but she really didn't know what she

 8    was meaning by damage done, would you?

 9         A    At this point in time we had several

10    different dates and really didn't -- were not able

11    to clarify what the date that the damage was done.

12         Q    Why?  And the statement from Teresa Minor

13    didn't shed much, if any, light on that, did it?

14         A    All the information that they had

15    provided to us, which included their initial letter

16    with the first notice, said November 19th.

17         Q    But you're still handling the claim on

18    the loss date of November the 6th?

19         A    We don't know the date of loss, sir.

20         Q    Then you go back -- as a matter of fact,

21    you handled the claim under a loss date of November

22    6th all the way through the end of what's been given

23    to us, Essex 1213, on November 10th, 2015.  If you'd

24    look at that sheet, please, ma'am.  Essex 1213.

25         A    That's --
```

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

29

```
1              MR. FINCH:  Hold on.  Hold on.  He made a
2    statement.  He hasn't asked you a question.  There's
3    no question pending.
4         A    All right.  I'm sorry.
5         Q    The question was, you handled the claim
6    all the way through page 1213, on November the 10th,
7    2015, under a date of loss of November 6th, 2013;
8    correct?
9         A    No.  That's a system-generated
10   printout --
11        Q    Wait a minute.  Yeah.  Let me ask you
12   something.
13             MR. FINCH:  Are you going to let her
14   finish her answer?
15        Q    Does your copy --
16             MR. FINCH:  Mr. Allred, are you going to
17   allow her to finish her answer?
18             MR. ALLRED:  I want to ask the question,
19   then she can say whatever she wants to say.
20             MR. FINCH:  No.  No, sir.  When you ask a
21   question, and she begins an answer, you cannot cut
22   her off.
23        Q    On Essex 1213, on November the 10th,
24   2015, what does it say for date of loss?
25             MR. FINCH:  Hold on a second.  What page
```

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

30

1      are you on?

2                   MR. ALLRED:   1213.

3                   MR. FINCH:   Okay.

4           A      It says under date of loss, November 6th,

5      2013.

6           Q      All right.   Now, what did you want to

7      tell me a while ago?

8           A      That's a system-generated printout, and

9      as I told you we can't go in and change that.

10     That's the date that was put in when the loss was

11     originally reported.

12          Q      Is there anything in the claims diary,

13     anywhere, where the date of loss was ever changed

14     from November 6th, 2013, to some other date?

15                  MR. FINCH:   I'm going to object to that

16     question as vague and ambiguous.   She's -- she's

17     told you that it can't be changed.   So why are you

18     asking her a question about if it was changed?

19          Q      No.   I'm -- here.   Let me clarify that

20     for your benefit and for Essex's lawyer's benefit.

21                  I agree with you and I accept it's true.

22     You can't change that date once you put it in.   It's

23     not taken out of thin air.   There's a reason that

24     it's put in there, and your company tries to get it

25     correct.   Is that a fair statement?   At the

Deposition of Corporate Designee, Stephanie Doyle
Conducted on March 23, 2016

45

1    due to toys being put down the toilet.

2         Q    Well, if the discovery, since you exited

3    the claim, has ruled out that anybody else did it,

4    and there's not been any mention of any toys put

5    down the toilet, but that the sole reason for the

6    backup of sewage was J&J, then does that indicate to

7    you that the reason for the claim and what they're

8    alleging is because of the breach of the sewer

9    line --

10             MR. FINCH:  Object.

11        Q    -- by your insured?

12             MR. FINCH:  Object to the form.

13        A    I think that they're assuming that, but

14   all of the evidence shows their claim and they were

15   damaged from November 15th forward.  So they even

16   all testified that the date of loss was after our

17   policy period.

18        Q    If there was some loss that occurred

19   after the policy period, are you saying that that

20   would mean it's not covered under Essex's policy?

21             MR. FINCH:  Object to the form.  It's a

22   vague hypothetical.

23        A    Can you clarify your question?

24        Q    Yes, ma'am.  Are you familiar with this

25   policy?