IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:15cv-506-WHA |
| | ) | |
| J&J CABLE CONSTRUCTION, LLC; | ) | (wo) |
| DIXIE ELECTRIC COOPERATIVE; | ) | |
| MARRELL A. CRITTENDEN, Jr.; | ) | |
| Individually and as next friend of M.C. and | ) | |
| A.C.; COURTNEY BYNUM CRITTENDEN, | ) | |
| Individually and as Next Friend of M.C. and | ) | |
| A.C.; CAROLINE TORRENCE, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| J&J CABLE CONSTRUCTION, LLC; | ) | |
| DIXIE ELECTRIC COOPERATIVE; | ) | |
| MARRELL A. CRITTENDEN, Jr.; | ) | |
| Individually and as next friend of M.C. and | ) | |
| A.C.; COURTNEY BYNUM CRITTENDEN, | ) | |
| Individually and as Next Friend of M.C. and | ) | |
| A.C.; CAROLINE TORRENCE, | ) | |
| | ) | |
| Counterclaimants, | ) | |
| v. | ) | |
| | ) | |
| EVANSTON INSURANCE COMPANY, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.     INTRODUCTION

This case is before the court on a Motion for Partial Summary Judgment filed by

Defendant J&J Cable Construction, LLC ("J&J Cable")(Doc. #80), a Motion for Summary

Judgment filed by Evanston Insurance Company (Doc. #81), a Motion for Summary Judgment

filed by Dixie Electric Cooperative LLC ("Dixie Electric") (Doc. #83), a Motion for Hearing (Doc. #101),[1] and a Motion to Strike the Crittenden and Torrence Response to the Dixie Electric and J&J Cable Motions for Summary Judgment (Doc. #107).[2]

The Plaintiff, Evanston Insurance Company ("Evanston"),[3] filed a Complaint for Declaratory Judgment in this case on July 15, 2015. Evanston filed an Amended Complaint on January 12, 2016 (Doc. #61).   Evanston seeks a declaration of its rights and obligations to defend and/or indemnify J&J Cable or Dixie Electric under a commercial general liability insurance policy in connection with two lawsuits pending in state court, seeking damages for the alleged bodily injury and property damage of Marrell A. Crittenden, Jr.; Courtney Bynum Crittenden; and the two minor children of the Crittendens (collectively "the Crittendens") and Caroline Torrence ("Torrence"). Dixie Electric filed crossclaims against J&J Cable in the underlying state court actions. Evanston is defending J&J Cable under a reservation of rights in the underlying actions.

For the reasons to be discussed, the Motion for Summary Judgment by Evanston is due to be DENIED, and the other pending Motions for Summary Judgment are due to be GRANTED in part and DENIED in part.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and   . .

---

[1] Evanston Insurance Company requested oral argument on pending motions, but did not identify any particular issues to present at oral argument. The court having been presented with multiple, voluminous briefs on the pending motion, the court does not find oral argument necessary in this case.

[2] The court has considered the Crittenden and Torrence brief not as an untimely Motion for Summary Judgment as Evanston asserts, but just as a brief in support of properly-filed motions, and the Motion to Strike is due to be DENIED.

[3] The Complaint was filed by Essex Insurance Company, but Evanston Insurance Company has been substituted in the place of Essex Insurance Company. (Doc. #121, 122).

. the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:

Dixie Electric hired J&J Cable to install underground electrical conduit in a subdivision in November of 2013. J&J Cable was performing underground boring work to install the electrical conduit for Dixie Electric. J&J's primary business was underground boring for cable and utility services. There is evidence before the court that the underground boring work was completed by Friday, November 8, 2013. All of the work on the job was completed on November 11, 2013. (Doc. #85-2).

It is undisputed that during the performance of this work, J&J struck and broke the sewer laterals to two houses owned by Dr. and Mrs. Jack Anderson. Sewer laterals are sewer pipes that run from a house to the city sewer main. The sewer laterals were damaged between November 8 and November 11, 2013. As a result, sewage backed up into a home occupied by tenants Marrell Crittenden, Courtney Crittenden, and their two children, M.C., and A.C. and another home occupied by tenant Caroline Torrence. A Crittenden child was taken to the hospital in connection with sewage exposure. The tenants of the two homes have claimed property damage and personal injuries in state court as a result of the backed-up sewage. The Defendants take the position that the Crittendens first began experiencing water issues while J&J Cable was still working at the site, on November 11, 2013, and that Torrence began experiencing issues in the beginning of November.

Marrell Crittenden stated in his deposition that he remembers "water irregularities and

discoloration starting around when the men were outside working." (Doc. #85-7 at p.25: 13-15).[4]
He said he remembered speaking to the workers when he took his daughter to school and they
started having issues with the water. (Doc. #85-7 at p.8:16-20).   Marrell Crittenden also testified
in his deposition that a toilet backed up and flowed out the Monday before November 16, 2013.
(Doc. #85-7 at p.46:10-16). November 16, 2013 was a Saturday.

     In an earlier deposition, taken in the state court cases, Marrell Crittenden stated that
before his wife told him about a problem with the plumbing on November 16, he remembered
cleaning the bathroom floor and toilet because of overflowing issues. (Doc. #80-6 at p. 45:8-
46:12).

     Evanston contends that the "great weight of the evidence" points to November 15-16,
2013 as the date that sewage backed up into the houses. Evanston points to deposition testimony
as well as the Crittenden's expert's opinion which is based on a November 16, 2013 to
November 25, 2013 timeframe. (Doc. #81 at p.15).   Evanston takes the position that Courtney
Crittenden and her children first experienced sewage back-up on November 16, 2013, and
Caroline Torrence does not know when she experienced the sewage back-up.

     As noted above, two lawsuits have been filed in the Circuit Court of Montgomery County
Alabama, against J&J Cable and Dixie Electric, claiming damages for the property damage and
personal injuries. The Crittendens's original Complaint was filed on January 15, 2014, and stated
that sewage seeped inside the home on or about November 15, 2013 until November 24, 2013.
Subsequent state law complaints alleged that on or about November 3, 2013 until November 11,

---

[4] The court has referred to the filing document number and internal page numbers from the
deposition.

2013, the sewage line was breached and thereafter raw sewage seeped into the home. The same language and dates appear in the Torrence complaint.

The owners of the two houses, Dr. and Mrs. Jack Anderson, made a claim with Dixie Electric, demanding that Dixie Electric pay for the costs they incurred related to the sewage issues. Dixie Electric filed claims against J&J Cable seeking indemnity for those costs. J&J Cable sought coverage under its Commercial General Liability Policy, issued by Evanston.

Evanston initially denied the claim, contending that the damage occurred outside of the one-year period for which the policy was effective, and claiming that a pollution exclusion of the policy applied. Evanston later agreed to defend J&J Cable in the underlying lawsuits under a reservation of rights.

The policy issued to J&J Cable provides coverage for "bodily injury" and "property damage" to which the insurance applies. (Doc. #85-13 at p.18). The insurance policy states that it applies to "bodily injury" and "property damage" only if they are caused by an "occurrence" and the "'bodily injury' or 'property damage' occurs during the policy period." (Doc. #85-13 at p.18). The policy also provides that "'bodily injury' or 'property damage' which occurs during the policy period and was not prior to the policy period, known to have occurred by any Insured . . . includes any continuation, change or resumption of that 'bodily injury' or the 'property damage' after the end of the policy period." (Doc. #85-13 at p.18).

The policy lists as an exclusion from coverage:

f. Pollution
(1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

(Doc. #82-3 at p.24).   The word "pollutants" is defined as follows:

6

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

(Doc. #85-13 at p. 20).

There is apparently no dispute that the policy expired on November 12, 2013.

## IV. DISCUSSION

In seeking a Declaratory Judgment that there is no coverage for the claimed losses under J&J Cable's commercial general liability policy, Evanston relies on two grounds: one, that the occurrences which are the subject of the underlying state court suits occurred outside of the policy period and two, that the pollution exclusion applies to preclude all claims. Evanston also contends that even if there is a question of fact as to whether one claim falls within the policy period, various separate claims occurred after the policy expired on November 12, 2013, and summary judgment is due to be granted as to those claims.

The court begins with the pollution exclusion arguments, then the date of the injuries arguments, and finally will address the grounds for relief stated in the separate motions by J&J Cable and Dixie Electric.

### A.  Pollution Exclusion

The pollution exclusion clause at issue appears to be standard in the insurance industry and commonly contained in commercial general liability insurance policies. The Supreme Court of Alabama previously has considered whether sewage is pollution under a **qualified** pollution-exclusion clause, and concluded, under the facts of that case, that it was not, *see United States Fidelity and Guar. Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985), but has not considered whether sewage is pollution under an **absolute** pollution-exclusion clause.

7

Evanston's position in this case is that the injuries claimed in the two underlying suits fit within the policy exclusion for property damage or bodily injury caused by pollutants, which by policy definition includes "waste," which is further qualified as including materials to be recycled, reconditioned, or reclaimed.   (Doc. #82-4 at p.13).   The issue, therefore, is whether under Alabama law this exclusion language unambiguously includes sewage as a pollutant.

When doubt exists over whether coverage is provided, the language of the insurer must be construed for the benefit of the insured.   *Guar. Nat'l Ins. Co. v. Marshall Cty Bd. of Educ*., 540 So. 2d 745, 748 (Ala. 1989).   Whether a provision of an insurance policy is ambiguous is a question of law for the court.   *Hutchinson v. Attorneys Ins. Mut*., 631 So. 2d 975, 976 (Ala. 1994).   The test to be applied by a court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean.   *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999).

Dixie Electric relies on *Armstrong*, 479 So. 2d at 1166, to argue the pollution policy exclusion at issue in this case is limited to industrial waste, and does not include residential sewage.   In *Armstrong* the insured destroyed sewer lines while installing new lines. *Id.* at 1166. The destruction caused an overflow of raw sewage onto adjacent land. *Id.* The defendant insurance company argued that its qualified pollution exclusion clause in the policy excluded the damage. The exclusion at issue there stated:

> This insurance does not apply to bodily injury or property damage
> arising out of the discharge, dispersal, release or escape of smoke,
> vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste
> materials or other irritants, contaminants or pollutants into or upon land, the
> atmosphere or any water course or body of water; but this exclusion does not apply if
> such discharge, dispersal, release or escape is sudden and accidental.

8

*Id.*   The Court held that to deny coverage under the clause would distort the purpose of the pollution exclusion, which was to protect the environment by eliminating coverage for industry-related pollution damages. *Id.* at 1168.   The Court pointed out that it had previously ruled that the same pollution exclusion clause had been ruled ambiguous, and that it was intended to cover only industrial pollution and contamination. *Id.* (citing *Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.*, 347 So. 2d 95 (Ala. 1977)).   However, the Court went on to state, "[w]e should not be understood to hold that raw sewage could never be such a 'pollutant,' or that the insurance company could not write an exclusion clause which would cover the activity here involved. We hold only that this policy clause, under the facts of this case, does not eliminate coverage." *Id.*

Evanston points to *Shalimar Contractors, Inc. v. Am. States Ins. Co.,* 975 F. Supp. 1450 (M.D. Ala. 1997) (Albritton, J.), which addressed the application of a pollution exclusion to lead paint.   In *Shalimar*, decided by this court, the insured was contracted to perform lead abatement work at a housing project. 975 F. Supp. at 1453. A mother and her two sons sued the insured alleging the contractor left debris containing lead on the porch and as a result they suffered from lead poisoning. *Id*. The court noted the clause "makes no reference to whether the release was into or upon land, the atmosphere, or water, or whether the release was sudden, accidental, or gradual in nature," distinguishing it from the qualified clause in *Armstrong*.   In other words, the clause involved in *Armstrong* was a qualified pollution-exclusion, while the clause involved in *Shalimar* was an absolute pollution-exclusion.   This court concluded that the lead was a pollutant within the language of the policy because it was a solid contaminant and a pollutant. *Id.* at 1458.

9

Subsequent to these two cases, the Alabama Supreme Court thoroughly examined the evolution of pollution exclusion clauses in commercial general liability insurance policies.   *See Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789 (2002).[5]   *Porterfield* was decided in response to a certified question from another judge of this court.   *Porterfield,* 856 So. 2d at 798 (question certified in *Janice Denise Porterfield, etc. et al. v. Audubon Indemnity Co*., Civil Action No. 00-D-1291-N (DeMent, J)).   The *Porterfield* court explained that in analyzing the applicability of an absolute pollution-exclusion clause, a court looks at three elements of those exclusions: (1) bodily injury or property damage caused by a pollutant, (2) exposure arising out of a discharge, dispersal, release or escape of the pollutant, (3) which occurred at or from certain locations or constituted waste.   *Id.* at 801.

The substance at issue in *Porterfield* was lead in paint, not sewage. However, the analysis is still instructive in this case. The court agreed with *Shalimar* that lead is a pollutant within the language of the policy. *Id.* at 805. The court held as a matter of law that a "reasonable insured would have understood that lead would qualify as a pollutant by virtue of its being an irritant or contaminant and a chemical." *Id.* at 805. The court went on to hold, however, that a reasonably prudent insured might have concluded that lead-paint flakes would not qualify as a "discharge, dispersal, release, or escape" of a pollutant within the language of the policy exclusion. *Id.* The court explained that because of the Alabama Supreme Court's characterization in previous cases of "'discharge' and 'dispersal' as terms commonly associated with environmental law, an insurer

---

[5] The Eleventh Circuit has applied Alabama law regarding the pollution exclusion in an unpublished opinion and found the exclusion to be unambiguous. *See Maxine Furs, Inc. v. Auto-Owners Ins. Co*., 426 F. App'x 687 (11th Cir. 2011). That case involved a curry aroma omitted by an Indian restaurant, not residential sewage and, therefore, is not instructive in this case.

subsequently employing those terms can be presumed to have intended the same construction as used by the Court." *Id.* at 806. The Court explained that "discharge," "dispersal," "release," or "escape," are reasonably susceptible to two or more meanings and are to be construed against the insurer. *Id.*

Applying the same analysis in this case points to a conclusion that sewage is not a pollutant within the terms of the policy exclusion, based on the previous ruling in *Armstrong* that sewage is not a "pollutant" under the qualified exclusion which the court found covered industrial pollution and contamination. *See Armstrong*, 479 So.2d at 1168. Under *Porterfield*, an insurer after *Armstrong* employing the term "pollutant" can be presumed to have intended the same construction as used by the Alabama Supreme Court. 856 So. 2d at 806.   In other words, because *Porterfield* directs courts to look at previous Alabama Supreme Court interpretations of the pollution exclusion, and because *Armstrong* found as a matter of law that sewage is not a pollutant under the qualified pollution-exclusion, a reasonably prudent person would understand "pollutant" not to include sewage under the facts of this case. Based on the current state of the law in Alabama regarding sewage and the pollution-exclusion, therefore, which this court is bound by *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938) to apply in this diversity case,[6] this court finds that the absolute pollution-exclusion contained in Evanston's comprehensive general liability insurance policy does not preclude coverage to its insured for liability for injuries caused by sewage, and summary judgment cannot be granted on that basis.

---

[6] Because this court is directed to refrain from making an unnecessary "*Erie* guess," *see Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916 (11th Cir. 1995), the court certified a question to the Supreme Court of Alabama and stayed this case pending a response (Doc. #117). Unfortunately, on July 1, 2016, the court declined to answer the certified question (Doc. #120).

B.  Date of Injury

Evanston argues that, because under Alabama law a covered loss only occurs when the complaining party was actually damaged, the claimed injuries of Marrell Crittenden, Courtney Crittenden, M.C., A.C., and Caroline Torrence must have all separately occurred within the policy period, and none of the injuries did so. Evanston states that there is no admissible evidence that prior to the expiration of the policy, anyone was exposed to raw sewage and human waste.

Relying on *American States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995), and other cases, including *U.S. Fid. & Guar. Co. v. Warwick Dev. Co*., 446 So. 2d 1021, 1024 (Ala. 1984), which interpret whether injury occurs within the policy period, Evanston argues that the breach of the sewer laterals occurred within the policy period, but the Crittendens and Torrence did not suffer any injury at that time, and their injuries were not manifest until after the policy lapsed, so there is no coverage. *See Warwick Development* 446 So.2d at 1024 (holding that there was no property damage as a result of the alleged occurrence because the "time of the 'occurrence' of an accident . . . is not the time the wrongful act was committed but the time the complaining party was actually damaged.").

The Defendants contend that the breach of the sewer laterals was indisputably within the policy period, so all of the damage which occurred as a result of that breach was part of the same occurrence. Initially, Dixie Electric cited the court to *American States Ins. Co.* (Doc. #92), but in subsequent briefing, Dixie Electric cited the court to *Home Indemnity Co. v. City of Mobile*, 749 F.2d 659 (11th Cir. 1984) and argued that, pursuant to that case, all injuries which are

proximately caused by the same occurrence are part of one occurrence, and so in this case, all of the injuries were caused by the breach of the sewer laterals. Various Defendants also cite the court to *Moss v. Champion Ins. Co.*, 442 So.2d 26 (Ala. 1983), to support an argument that coverage applies in this case because the property damage and bodily injury suffered by the Crittendens and Torrence was part of the same occurrence.

As Evanston points out, the *Home Indemnity Co.* case relied on by Defendants in this case was an interpretation of "occurrence" within the policy. Similarly, in *Moss*, also relied on by the Defendants, the court was interpreting the definition of "occurrence" in a commercial general liability policy. *Moss*, 442 So. 2d at 29. In *Moss*, the court distinguished *Warwick Development*, stating that in *Warwick Development*, where the damage did not arise during the policy period, "there was no 'property damage' within the definition of the policy provisions." 442 So.2d at 29.[7]

It appears to the court that there are two separate lines of precedent relied on by the parties in this case which, while involving seemingly similar issues, are to be applied depending upon the policy provision being examined. In one line of precedent, relied on by the Defendants, courts have examined injuries to see whether they fall within the scope of an "occurrence" as defined by a policy.   In the other, courts have examined the timing of loss relative to the coverage period and have held that "injury, and not an occurrence that causes injury, must fall

---

[7]  Interestingly, *Warwick Development* distinguishes *Moss*. *Warwick Development*, 446 So. 2d at 1023, stating "[f]or a contrary holding under circumstances amounting to "an occurrence," *see Moss v. Champion Ins., Co.*, 442 So. 2d 26 (Ala. 1983).This anomaly apparently exists because a later opinion was substituted for the original opinion in *Warwick Development*. 446 So. 2d at 1022. In any event, the *Moss* and *Warwick Development* courts are drawing a distinction between cases analyzing whether damage occurred within the policy period and "occurrence" cases.

within the policy period for it to be covered." *American States Ins. Co*., 662 So.2d at 250; *see also Penn. Nat. Mut. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1179 (11th Cir. 2015)(stating that *American States* is a case concerning whether the property damage definition was met, not a case defining "occurrence").

The issue before the court in this case is whether, under the policy language, the "bodily injury" and "property damage" suffered by the Crittendens and Torrence occurred during the policy period. That inquiry is governed by the cases analyzing timing of the injury, such as *American States Ins. Co*., not the scope of "occurrence" cases.

In *American States Insurance Co*., a commercial general liability policy provided for coverage for bodily injury during the policy period. Representations were made before the policy terminated, and the victims argued that their mental anguish stemmed from incidents which occurred during the policy period. The Supreme Court of Alabama explained that under the policy the "injury, and not an occurrence that causes injury, must fall within the policy period for it to be covered." 662 So.2d at 250. The Court concluded that for the mental anguish, which occurred after the policies had lapsed, there was no coverage for bodily injury. *Id.* In reaching that conclusion, in addition to *Warwick Development,* the court also relied on *State Farm Fire & Cas. Co. v. Gwin*, 658 So.2d 426 (Ala. 1995).

In *Gwin*, homeowners sold their house and the insurance coverage on the property ended at the time of the closing. The buyers subsequently noticed termites in the home and sued Terminix, a company which had treated the property for termite damage when it was owned by the sellers, and also sued the sellers, alleging fraud. The sellers' insurance company filed a declaratory judgment action. The policy at issue stated that it covered bodily injury caused by an

occurrence during the policy period. *Id.* at 427. The Court found that the coverage did not apply to the buyers' bodily injury in the form of emotional distress because any "emotional distress related to the alleged misrepresentations would have occurred after the termination of the policy." *Id.* at 428; *see also Essex Ins. Co. v. J & J Masonry LLC*, No. 2:14-CV-2138-VEH, 2015 WL 1499120, at *2 (N.D. Ala. Apr. 1, 2015) (stating that Alabama courts apply a manifestation of damages rule which means "the insurance that is in force at the time of the property damage ... is applicable rather than insurance that was in force when the work was performed.").

While the parties have discussed in their briefs whether plumbing is the responsibility of the homeowner or the tenant of the homes, the underlying state court suits do not claim damage to the sewer laterals as being an injury to the Crittendens or Torrence, but instead identify bodily injury and damage to household possessions. (Doc. #82-1 at p.9, 25). Therefore, for there to be "bodily injury" or "property damage" within the policy period, the claimed property damage or personal injury occurring after the sewer lateral breach had to commence before the policy lapsed. *See Pennsylvania Nat. Mut. Cas. Ins. Co*., 790 F.3d at 1178 ("stating "[w]hen an insured causes multiple injuries, coverage is determined on an injury-by-injury basis, and the insurer is obligated only to indemnify for damages arising out of the covered injuries.").

Evidence has been presented that damage occurred before the policy expired, in the form of Marrell Crittenden's deposition testimony. In his January 7, 2016 deposition in this case, Marrell Crittenden testified that he did not remember exact dates, but he does remember that they were experiencing problems with water in bathroom areas while men were outside working at their house. (Doc. #85-7 at p.25: 13-15; 46). In an earlier, June 27, 2014 deposition, taken in the

15

underlying state court case, Marrell Crittenden was asked whether he was aware that his wife noticed a problem on Saturday, the sixteenth, and he said that he was aware of his wife's complaint, but he also remembered "before that date" having to clean the bathroom floor and toilet because of issues of flooding. (Doc. #80-6 at p.45:8-46:12).

Evanston argues that Marrell Crittenden's deposition in 2016 contradicted his 2014 deposition and therefore cannot bar summary judgment because it should not be considered as evidence by the court.

In the Eleventh Circuit, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Where testimony is not "inherently inconsistent" with prior deposition testimony, however, it should be "considered with everything in the record resolving all doubts in favor of the nonmoving party." *Akins v. Fulton Cty., Ga.,* 278 F. App'x 964, 969 (11th Cir. 2008).

In his 2014 deposition, as noted, Marrell Crittenden stated that before November 16 he noticed a problem and had to clean the bathroom floor and toilet. The court concludes, therefore, that because Marrell Crittenden testified consistently in 2014 and 2016 that he noticed issues with the plumbing before November 16, 2013, his later testimony does not merely contradict the earlier testimony, and the court cannot discount his more specific testimony in 2016 as to the circumstances under which he first noticed a plumbing issue. This question of fact, therefore,

means that Marrell Crittenden's injuries were within the policy period.[8]

Evanston further argues that even if Marrell Crittenden's deposition testimony is sufficient to create a question of fact as to the timeliness of a claim based on his injuries, that testimony is not sufficient to support the claims based on any other individuals' injuries.

Dixie Electric cites to Marrell Crittenden's deposition testimony to show that his daughter, M.C., was also present during this first exposure to the sewage. (Doc. #85-7 at p.8, citing p. 25:13-20; #85-10 at p.13 citing p.47:3-20).

Courtney Crittenden offered deposition testimony, to which Evanston has objected as hearsay and inadmissible, that her husband had mentioned a sewage issue on the Monday or Tuesday before November sixteenth. (Crittenden Dep. at p. 63:8-64:11).

Courtney Bynum, the sister of Courtney Crittenden, stated in her 2016 deposition that she witnessed two incidents of sewage back-up in the house and the second incident occurred on November 16. (Doc. #85-9 at p.34:9-11). She testified that the previous incident was approximately two weeks before that incident. (Doc. #85-39:14-19). Evanston argues that this testimony should not be considered because it contradicts her earlier testimony. In 2014 Courtney Bynum testified to seeing sewage backing up on November 16 when she was present at the house, and then was asked as a follow up question: "Now was this the first time anything happened, on the 16th?" (Doc. #82-2 at p.43:-3-4). Her "yes" response could be read to say it was

---

[8] Evanston has also argued that Dixie Electric is estopped to revise the occurrence date because the settlement agreement between Dixie Electric and Dr. Jack Anderson in the underlying lawsuit adopted a date of November 19, 2013 as the date of the occurrence. Dixie Electric argues, however, that the document referred to by Evanston is not a settlement agreement, but merely a release signed by Anderson, and that Evanston has not detrimentally relied on that date in any way. For purposes of the coverage issue, the court agrees that this argument does not remove the question of fact created by deposition testimony.

17

the first time anything happened on that day, and, in that case, would not be contradicted by her later testimony as to a previous date on which there was sewage back-up.

Torrence was asked in her deposition about the date of sewage back-up and she answered that she did not know an exact date, but that it was "in the beginning of November of 2013." (Doc. #86-6 at p. 40:16-41:11).

The court recognizes that there is evidence in this case which points to the November 16, 2013 date as the date injuries were suffered by the Crittendens and Torrence. The court's role in ruling on Evanston's Motion for Summary Judgment, however, is not to weigh evidence, but to accept the evidence of the nonmovant and draw justifiable inferences in favor of the nonmovant. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).   Even without considering Courtney Crittenden's statement as to her husband's experience which has been objected to as hearsay, when all of the deposition testimony on the question of when sewage back-up was experienced in the two houses is taken together and viewed in the light most favorable to the non-movants for purposes of Evanston's motion, there is evidence from the Crittenden household and from Torrence that there was sewage back-up and exposure to sewage before the insurance policy expired. The court concludes, therefore, that there is sufficient evidence from which a reasonable finder-of-fact could conclude that damage from sewage back-up in the form of either bodily injury or property damage, or both, were suffered by all of the Crittendens and Torrence prior to the expiration of the policy on November 12, 2013.

Evanston also contends that Torrence's claims are barred by the statute of limitations if her injuries occurred prior to November 18, 2013 because she filed her suit on November 18, 2015. (Doc. #95 at p.3).   However, Torrence's underlying state court complaint was filed on

18

November 1, 2015, not November 18, 2015. (Doc. #50-1 at p.91). Her claims are timely.

Evanston's Motion for Summary Judgment is, therefore, due to be DENIED.

### C.   Dixie Electric's Motion for Summary Judgment

Dixie Electric moves for summary judgment against Evanston as to the claims it has asserted in its First Amended and Supplemented Counterclaim and for summary judgment as to all of Evanston's claims for Declaratory Judgment. The First Amended and Supplemented Counterclaim seeks coverage under the policy. Dixie Electric alleges that it has asserted an indemnity claim against J&J Cable in the underlying state court litigation and it seeks a declaration in this court that Evanston owes coverage to J&J Cable for Dixie Electric's claims against it.   (Doc. #50).

Evanston has argued that Dixie Electric does not have a justiciable controversy concerning coverage because Dixie Electric is not an insured under the policy. J&J Cable is the insured under the policy, not Dixie Electric. Evanston contends that if Dixie Electric intends to assert its claim as a direct action, it is premature, because a claim against the insurer must be brought only if the injured party has recovered a final judgment against the insured, citing *Knox v. W. World Ins. Co*., 893 So. 2d 321, 324 (Ala. 2004).

Dixie Electric responds that Evanston admitted in its Answer the following allegation in its First Amended and Supplemented Counterclaim: a real justiciable dispute exists between Dixie and Evanston as to the defense, indemnity, and coverage obligations of Evanston under the 2012-2013 CGL Policy. (Doc. #50, p.11, ¶40; Doc #51; p.5, ¶40). Dixie Electric argues that Evanston cannot name it as a Defendant and move for summary judgment as to it on coverage issues, and then argue that Dixie Electric does not have standing to make arguments regarding

19

coverage issues.

Assuming without deciding that Dixie Electric's requested relief has been appropriately asserted at this point in the proceedings, other than the court's determination as to the inapplicability of the pollution exclusion in this case under Alabama case law, the questions of fact discussed above preclude summary judgment as to either party on coverage issues at this time.

### D.   J&J Cable's Motion for Partial Summary Judgment

J&J Cable moves for summary judgment as to its counterclaims and in opposition to Evanston's motion. J&J Cable is the insured under the subject CGL policy. J&J Cable states that Evanston received notice on January 15, 2014 that the Crittendens claimed in state court that J&J Cable had caused property damage. J&J Cable argues that Evanston breached a duty to defend from January 2014, when notice of suit was received, until November 2014, when Evanston began to defend J&J Cable. J&J Cable states that prior to November 2014, Evanston was aware that injuries and damages suffered by the Crittendens and the Andersons occurred within the policy period. J&J Cable concedes that it struck the sewer line and states that this resulted in property damage to the owners of the rental property, Dr. and Mrs. Anderson, and to the tenants.

In support of its motion, J&J Cable states that Evanston reviewed the discovery in the state court case and was aware that the Amended Complaint states, and a response to an interrogatory in state court states, that the sewer line was breached until November 11, 2013. J&J Cable also points to the deposition of Marrell Crittenden on June 27, 2014 and Courtney Crittenden, taken on June 27, 2014, which shows that damage occurred during the policy period. In its Reply brief, J&J Cable cites to the deposition testimony of Stephanie Doyle, Evanston's

claims handler, and the Evanston claims diary.   The claims diary entry states that the insured did

the work on "11/6/13 which was within the policy period" but the damage manifested after the

policy period. (Doc. #97-1).

Evanston responds that there was nothing to show that injury occurred within the policy

period until Dixie Electric made a claim against J&J Cable for damages due to repairs of the

homeowners, the Andersons', sewer line. Evanston points out that the original lawsuit filed by

the Crittendens stated that on or about November 15, 2013 until November 24, 2013, sewage

invaded the Crittenden home. The first Amended Complaint filed on October 10, 2014, states

that on November 3, 2014 until approximately November 11, 2013, the sewage line was

breached and thereafter sewage seeped into the home. Evanston states even the Amended

Complaint does not allege that sewage was present in the home until after November 11, 2013.

Evanston states that in November of 2014, Dixie Electric filed a cross-claim against J&J Cable

seeking reimbursement for damages to the cost to repair the Andersons' broken sewer laterals. It

was pursuant to that cross-claim that Evanston provided a defense under a reservation of rights.

Evanston points to deposition testimony for the proposition that the November 6, 2013 date in

the claim diary was made by a clerical person in the operations department, and that it is

Stephanie Doyle's job to determine the correct date of loss. (Doc. #105 at p.26-27).[9]

Under Alabama law, in examining the duty to provide a defense, courts first determine

---

[9] Evanston states that this court should not consider various aspects of J&J Cable's evidence for failing to follow the court's order regarding citation of deposition testimony, and because Marrell Crittenden's testimony is contradictory and Courtney Crittenden's testimony is based on hearsay. The court has considered the deposition testimony as cited by various parties, and has found questions of fact as discussed above.

whether the facts alleged in a complaint state an "occurrence" within the meaning of the policy. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005). Then, "presupposing a negative answer to the first inquiry, we must determine whether the "facts which may be proved by admissible evidence state an 'occurrence.'" *Id.*

The initial pleading in state court alleged that the tenants claimed damage which occurred after the policy period. Even after the dates were adjusted in the state court Amended Complaint as to when the work occurred, it was not clear when the claimed damage from exposure to sewage was alleged to have occurred, and it was unclear even at the time of Marrell Crittenden's initial deposition in 2014. And, the question of fact which has been created exists only when the facts are viewed in a light most favorable to the non-movants for purposes of Evanston's motion. Accordingly, the court concludes that the motion by J&J Cable on the duty to provide a defense from January 2014 to November 2014 is due to be DENIED.[10]

Evanston also states that J&J Cable did not support its bad faith claim. Evanston further argues that J&J Cable does not have a claim for failure to defend based on Torrence's lawsuit because she filed her suit in November 2015, after Evanston began providing a defense to J&J in November 2014. The Motion for Partial Summary Judgment by J&J Cable, however, does not seek judgment on these issues.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

---

[10] Evanston's Motion for Summary Judgment is based on the coverage issue, and its contention, as to which there are questions of fact, that damage occurred on November 16, 2013, rather than specifically on the issue of when it had a duty to defend J&J Cable.

1. The Motion for Partial Summary Judgment filed by J& Cable (Doc. #80) is GRANTED as to the pollution exclusion and DENIED in all other respects.

2. The Motion for Summary Judgment by Evanston Insurance (Doc. #81) is DENIED.

3. The Motion for Summary Judgment filed by Dixie Electric (Doc. #83) is GRANTED as to the pollution exclusion and DENIED in all other respects.

4. The Motion for Hearing filed by Evanston Insurance (Doc. #101) is DENIED.

5. The Motion to Strike filed by Evanston Insurance (Doc. #107) is DENIED.

Done this 22nd day of September, 2016.

/s/ W. Harold Albritton
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE